In re the Marriage of John Stuart
**SALSTROM, Petitioner, Appellant,**

v.

**Pamela Horstmann
SALSTROM, Respondent.**

No. C0-86-1291.

Court of Appeals of Minnesota.

April 21, 1987.

Jack S. Jaycox, Paul M. Gabbert, Jack S. Jaycox Law Offices Ltd., Bloomington, for appellant.

Leo Dorfman, Dorfman & Dorfman, Ltd., Minneapolis, for respondent.

Heard, considered and decided by FORSBERG, P.J., and RANDALL and STONE,* JJ.

## OPINION

STONE, Judge.

This appeal is from a judgment and an amended judgment dissolving the 19–year marriage of appellant John Stuart Salstrom

* Acting as judge of the Court of Appeals by ap-       pointment pursuant to Minn. Const. art. 6, § 2.

and respondent Pamela Horstmann Salstrom. Appellant challenges the trial court's characterization of certain stock options exercisable by him in 1987 and 1988 as marital property and its award to respondent of his nonmarital interest in the parties' homestead. He further claims that the trial court erred in failing to fully consider the tax consequences of the marital property distribution. We affirm in part, reverse in part and remand.

## FACTS

The parties met while attending college at Miami University in Oxford, Ohio. They married in June 1967, shortly after receiving their undergraduate degrees—appellant's in microbiology and respondent's in secretarial studies.

For the next ten years the parties lived in Madison, Wisconsin, where appellant worked first on his masters degree and then on his doctorate in molecular biology. During this time respondent worked as a secretary.

Appellant's educational expenses were paid by a testamentary trust established by his uncle. In 1974, appellant and two others formed Marshall-Taylor Enterprises, Inc. (MTE), primarily for the purpose of investing the trust proceeds. Appellant also transferred the corpus of the trust to MTE when distributed to him in 1975.

In 1977, the parties and their two daughters moved to Boston where appellant had received a three-year post-doctoral fellowship. With the assistance of funds from MTE, the parties purchased their first home located on Applegarth Street. Appellant received a yearly stipend and respondent offered day-care services in their home.

In 1980, appellant moved to Minneapolis and began working for Molecular Genetics, Inc. In 1981, respondent and the children joined him. A home was purchased on Bruce Avenue with proceeds traceable from the sale of the Applegarth Street property.

After moving to Minneapolis, respondent worked first as a salesperson and later as an office manager. She left her job in September 1985, a few months before the January 1986 trial. Appellant remained with Molecular Genetics until February 1984, when he left to work for Endotronics, Inc. At the time of trial, he was earning almost $60,000 per year.

Based on the evidence submitted, the court valued the marital property at $605,208 with liabilities of $86,887. This property was equally divided between the parties. Incentive stock option rights received by appellant from Endotronics and exercisable in February 1987 and February 1988 were included in the marital estate and also divided equally. The court further apportioned the equity in the Bruce Avenue homestead and determined appellant's nonmarital share to be 60.5% (or $42,350). Based on a finding of unfair hardship, the court awarded the entire homestead to respondent. Appellant was awarded his entire interest in MTE as nonmarital property.

Judgment was entered in May 1986. The trial court thereafter granted a motion by respondent for amended findings. Although appellant had filed a "responsive motion," he did not file a motion for specific post-trial relief. The value of the marital estate (which the trial court again divided equally) was increased to $836,618, with liabilities of $227,119. Tax burdens were readjusted to eliminate any duplication. A second judgment incorporating these amendments was entered in July 1986. This appeal followed.

## ISSUES

1. Did the trial court err as a matter of law in characterizing the incentive stock options as marital property?

2. Did the trial court err as a matter of law in making a finding of unfair hardship?

3. Did the trial court abuse its discretion in failing to fully consider the tax consequences of the ordered property distribution?

## ANALYSIS

Appellant made no post-trial motions and is appealing directly from the judgments.

On appeal from a judgment, our scope of review is limited to whether the evidence sustains the findings of fact and whether those findings support the conclusions of law and judgment. *Gruenhagen v. Larson,* 310 Minn. 454, 458, 246 N.W.2d 565, 569 (1976); *Fritz v. Fritz,* 390 N.W.2d 924, 925 (Minn.Ct.App.1986).

A trial court's distribution of property is entitled to deference and will be affirmed as long as it has a reasonable basis in fact and principle. *Kreidler v. Kreidler,* 348 N.W.2d 780, 782–83 (Minn.Ct. App.1984). However, an appellate court need not defer to a trial court's decision on a question of law. *Van de Loo v. Van de Loo,* 346 N.W.2d 173, 175 (Minn.Ct.App. 1984) (citing *Durfee v. Rod Baxter Imports, Inc.,* 262 N.W.2d 349, 354 (Minn. 1977) and *A.J. Chromy Construction Co. v. Commercial Mechanical Services, Inc.,* 260 N.W.2d 579, 582 (Minn.1977)). Characterization of property as either marital or nonmarital is one of those questions of law upon which we exercise independent judgment. *Van de Loo,* 346 N.W.2d at 175.

## I

Appellant first challenges the trial court's classification of the incentive stock options as marital property. These options arose out of a series of three Stock Option Agreements executed by appellant and his new employer, Endotronics. The first agreement was executed on March 1, 1984, three days after he began working for Endotronics, and the next two agreements were signed on August 28, 1984 and July 18, 1985.

At the time of dissolution in May 1986, appellant still possessed option rights to purchase 7,759 shares in February 1987 and 7,759 shares in February 1988 at the price of $3.22 per share. In the judgment and decree, no present value was assigned to the stock and each party was awarded half of the shares to be acquired. The trial court retained jurisdiction pending exercise of the options and final distribution of the stock.

In Minnesota, marital property is defined as

property, real or personal, *including vested pension benefits or rights,* acquired by the parties, or either of them, * * * during the existence of the marriage relation * * *.

Minn.Stat. § 518.54, subd. 5 (1984) (emphasis added). The trial court in this case noted that stock options exercisable after the date of dissolution are similar to vested pension plans and concluded that these options "are an economic resource acquired during the marriage constituting a marital asset."

Appellant claims that the trial court's analogy of stock options to pension benefits ignores "both the delineations set forth in the Internal Revenue Code between pensions and incentive stock options and the reality of the factual underpinnings of the specific long term incentive stock option plans at issue here." Federal tax laws have little relevance to the characterization of property as marital or nonmarital under Minnesota law. We also question appellant's claim that the sole purpose of the options was to compensate him for future services. The timing of these options suggest that they were granted to induce him to leave Molecular Genetics and join Endotronics: the first option was executed three days after he began working for Endotronics in February 1984, and the last option only six months later.

We initially conclude that the trial court properly determined that these stock options have marital aspects. In *Janssen v. Janssen,* 331 N.W.2d 752 (Minn.1983), the supreme court held that a *nonvested, unmatured* pension constituted marital property under Minn.Stat. § 518.54, subd. 5 because it is "more than a mere expectancy—it becomes a *chose in action,* a contractual right: a property interest." *Janssen,* 331 N.W.2d at 754 (citing *In re Marriage of Brown,* 15 Cal.3d 838, 845, 126 Cal.Rptr. 633, 637, 544 P.2d 561, 565 (1976)) (emphasis in original) (other citation omitted). The stock options here are substantially similar to the nonvested pension rights in *Janssen.* The options give rise to a contractual right, as evidenced by the

three written agreements executed during the marriage in 1984, and they are subject to forfeiture if appellant's employment with Endotronics terminates.

The next question we must answer is whether these options contain any nonmarital aspects and whether equal division was proper. The statute governing marital property further provides in pertinent part:

> Each spouse shall be deemed to have a common ownership in marital property that vests not later than the time of the entry of the decree in a proceeding for dissolution or annulment. The extent of the vested interest shall be determined and made final by the court * * *. The presumption of marital property is overcome by a showing that the property is non-marital property.
>
> "Non-marital property" means property real or personal, acquired by either spouse before, during, or after the existence of their marriage * * *.

Minn.Stat. § 518.54, subd. 5 (1984). One of the stock options in this case was scheduled to vest in February 1987, almost a year after the parties' marriage was dissolved. The other stock option is scheduled to vest in February 1988. Because appellant acquired a portion of these assets after entry of the divorce decree, they have both marital and nonmarital aspects which the trial court should have apportioned.

We therefore remand the matter for apportionment of the parties' respective interests. Again, *Janssen* lends guidance. After determining that the nonvested pensions in *Janssen* constituted marital property, the supreme court examined the trial court's decision to retain jurisdiction of the matter and reserve determination of the parties' respective interests until vesting. *Janssen*, 331 N.W.2d at 756. Concluding that a better approach would have been apportionment of the future benefits when and if paid, the supreme court remanded the matter for determination of that division. In so doing, the court stated:

> We recently outlined a method of division for vested but unmatured benefits in *Taylor v. Taylor*, 329 N.W.2d 795 (Minn. 1983). Nonvested pensions need not be treated any differently than vested but unmatured pension rights or benefits: both contain contingencies on the actual payment of pension benefits.
>
> Apportioning the future benefits only if and when they are paid is an approach suggested in the leading case, *In re Brown*, [15 Cal.3d 838, 126 Cal.Rptr. 633, 544 P.2d 561 (1976)], and in other decisions. *In re Marriage of Hunt*, 78 Ill. App.3d 653, 663, 34 Ill.Dec. 55, 397 N.E.2d 511, 519 (1979), offers especially appropriate guidance to trial courts facing this type of division:
>
>> In those instances where it is difficult to place a present value on the pension or profit sharing interest due to uncertainties regarding vesting or maturation * * * then the trial court in its discretion may award each spouse an appropriate percentage of the pension to be paid "if, as and when" the pension becomes payable. [Citations omitted.] *The marital interest in each payment will be a fraction of that payment, the numerator of the fraction being the number of years (or months) of marriage during which benefits were being accumulated, the denominator being the total number of years (or months) during which benefits were accumulated prior to when paid.* The trial court, when using this method of allocation, will retain jurisdiction and award the nonemployee spouse some percentage of the marital interest in each payment.
>
> We realize that this approach may necessitate the trial court's retention of jurisdiction to oversee the marital property division, but such an administrative burden is not insuperable. Trial courts routinely assume supervision of maintenance payments.

*Janssen*, 331 N.W.2d at 756 (emphasis added).

The method suggested in *Janssen* of apportioning interests in a nonvested pension is very similar to the "time rule" adopted in *In Re Marriage of Hug*, 154 Cal.App.3d 780, 784, 201 Cal.Rptr. 676, 679 (Cal.Ct.

App.1984). This "time rule" should be used by the trial court in this case as a starting point for its determination. Modifications of the rule may be warranted, especially because in Minnesota property is marital until the date of dissolution while in California property is considered community only until the parties separate. *See Rohling v. Rohling*, 379 N.W.2d 519, 522 (Minn.1986); *Hug*, 154 Cal.App.3d at 784 n. 1, 201 Cal.Rptr. at 679 n. 1. *Hug* also stresses that the time rule is not inflexible and can be modified depending upon the particular facts of the case, including the different purposes to be served by the stock options. *Id.* at 792, 201 Cal.Rptr. at 685.

Finally, we take judicial notice of the fact that the value of Endotronics stock has decreased drastically since the time of trial in January 1986, when it was valued at approximately $34 per share. *See Bollenbach v. Bollenbach*, 285 Minn. 418, 429 n. 5, 175 N.W.2d 148, 156 n. 5 (1970). We recognize that this decrease may render moot our decision on the stock options. Indeed, this decrease may affect the entire property distribution. In July 1986, the trial court estimated that the value of the marital estate was $837,618. Endotronics stock contributed about $680,000 to that value. On remand, the trial court is free to proceed in any manner not inconsistent with this opinion. *See Nash v. Kirschoff*, 161 Minn. 409, 412, 201 N.W. 617, 618 (1925). This does not mean, however, that the entire case need be retried or that the entire property distribution is subject to reexamination or modification.

## II

Appellant next contends that the trial court erred in awarding respondent his nonmarital interest in the parties' homestead. The facts establish that MTE provided $16,500 for the downpayment on the parties first home on Applegarth Street. After closing, the parties conveyed the property to MTE. MTE thereafter made the mortgage payments of $559 per month, and the parties paid "rent" to MTE of around $350 per month. Respondent testified that she was unaware of this arrangement and believed that marital funds were being used to pay the mortgage directly. She claims that appellant told her that the property was transferred to MTE for tax reasons.

Under the trial court's calculations, MTE contributed a total of $10,240 in mortgage payments to the Applegarth Street home. Appellant's nonmarital interest in the Bruce Avenue property, traceable from the Applegarth property and ultimately from MTE, was determined to be $42,350 or 60.5% of the equity. Reasoning that appellant acquired appreciation on this nonmarital asset through his misrepresentations to respondent, the trial court made a finding of unfair hardship and awarded the entire homestead to respondent.

Appellant claims the trial court's finding of unfair hardship was error because a factor not enumerated in Minn. Stat. § 518.58 (1984) was considered and because the substantial value of the marital estate precludes such a finding. We agree. By statute nonmarital property is subject to division only under certain circumstances:

If the court finds that either spouse's resources or property, * * * are so inadequate as to work an unfair hardship, considering all relevant circumstances, the court may, in addition to the marital property, apportion up to one-half of the property otherwise excluded [because defined as nonmarital property] to prevent unfair hardship. If the court apportions property other than marital property, it shall make findings in support of the apportionment. The findings shall be based on all relevant factors including the length of the marriage, any prior marriage of a party, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities, needs, and opportunity for future acquisition of capital assets and income of each party.

Minn.Stat. § 518.58 (1984).

We do not believe that appellant's misrepresentations, if any, are a "relevant factor" upon which a finding of unfair

hardship can be made. Nor do we believe that a finding of unfair hardship is possible in a case such as this, where the marital estate has a substantial value and neither party's resources are "so inadequate as to work an unfair hardship." *Id.* The finding of unfair hardship is therefore reversed.

Because this case is being remanded for apportionment of the nonmarital/marital interests in the stock options, the issue of the nonmarital interest in the homestead should also be considered on remand. Although appellant's nonmarital interest in the homestead cannot be awarded under a finding of unfair hardship, it appears that the trial court awarded appellant a greater share of marital property to compensate for the loss of his nonmarital interest in the homestead. Respondent calculates that overall she was awarded only about $10,-000 of nonmarital property. Such a distribution may be a proper and equitable way for the trial court to distribute the property in this case. *See Riley v. Riley,* 369 N.W.2d 40, 43 (Minn.Ct.App.1985), *pet. for rev. denied,* (Minn. Aug. 29, 1985), *appeal after remand,* 385 N.W.2d 883 (Minn.Ct. App.1986) (overall property distribution not an abuse of discretion where a portion of each spouse's nonmarital property was awarded to other).

### III

Finally, appellant claims that the trial court abused its discretion in failing to fully consider the tax consequences arising from its ordered property distribution. He complains that he was ordered to assume responsibility for $227,119 in marital liabilities and that instead of being awarded cash or liquid assets to pay off these liabilities, he was awarded additional shares of stock. He claims that he will suffer immediate and specific tax consequences when he has to sell this stock in order to meet these liabilities.

A trial court need consider "only those tax consequences that arise from the distribution itself" and need not speculate as to "the possible tax consequences of either party's future dealings with the property." *Aaron v. Aaron,* 281 N.W.2d 150, 153 (Minn.1979). Here, the record does not show that appellant will have to sell this additional stock in order to meet these debts. Indeed, what it does show is that he has other assets with which he might pay off his liabilities, including his nonmarital interest in MTE and his annual salary of $59,400. *See Hattstrom v. Hattstrom,* 385 N.W.2d 352, 336–37 (Minn. Ct.App.1986), *pet. for rev. denied,* (Minn. June 30, 1986) (tax consequences need not be considered where no finding that property award will necessitate withdrawal of funds from benefit plans).

### DECISION

Affirmed in part, reversed in part and remanded.