687 So.2d 655 (1997)
Karen GREEN, Plaintiff-Appellee,
v.
Ronald W. SCOTT, Defendant-Appellant.
No. 29197-JA.
Court of Appeal of Louisiana, Second Circuit.
January 22, 1997.
*656 Alex Rubenstein, Shreveport, for Defendant-Appellant.
Mary S. Cowles, Department of Social Services, Support Enforcement Division, for Plaintiff-Appellee.
Before NORRIS, CARAWAY and PEATROSS, JJ.
CARAWAY, Judge.
Ronald Scott appeals a juvenile court judgment increasing his monthly child support obligation from $368.33 to $609.00. Mr. Scott asserts the court erred in considering his $1,177,065.01 lottery winnings as gross income for purposes of calculating his child support obligation. For the reasons expressed herein, we affirm.

Facts
Ronald Scott of Shreveport and Karen Green of New York are the parents of Dante Scott who was born on December 10, 1982. In October 1992, the Family Court of the State of New York ordered Mr. Scott to pay $368.33 a month in child support to Ms. Green, the domiciliary parent. On January 21, 1995, Ronald Scott won the $1,177,065.01 Louisiana Megabucks jackpot. He will receive 20 annual payments of $58,853.25. Subsequently, Ms. Green sought an increase in the child support award, and Mr. Scott defended, asserting the lottery proceeds were not gross income for purposes of calculating child support nor for showing a change in circumstances justifying an increase.
Mr. Scott earns $3,299.78 per month at General Motors in Shreveport while Ms. Green earns $737 per month as a part time child care worker in Bronxville, New York. Mr. Scott is currently involved in divorce proceedings in Louisiana and is under court order to pay $892.65 in child support for two other children. Additionally, Mr. Scott is the domiciliary parent of a fourth child, Ronald Scott Jr. Because the lottery proceeds are community property, it is undisputed that Mr. Scott will receive only one half of the $58,853.25 prize money or $29,426.62 annually. The annual $29,426.62 lottery proceeds increase Mr. Scott's monthly income to $5,752.00 and his support obligation under the Louisiana guidelines for the benefit of Dante Scott, to $658.85. If the money is not included in Mr. Scott's gross income calculation, then his support obligation under the Louisiana guidelines is $365.75.
The hearing officer determined that the lottery proceeds should be included in the calculation of gross income and that such a significant increase in gross income resulted in a change of circumstances. However, the hearing officer deviated from the guidelines' recommendation because of Mr. Scott's legal obligation to support his other children. The hearing officer recommended and the juvenile court ordered Mr. Scott to pay $609 a month in child support. Mr. Scott appeals asserting the lottery proceeds should not be considered gross income for purposes of calculating child support and that Ms. Green failed to show a change in circumstances to justify an increase in the award.

Law
Fathers and mothers, by the very act of marrying, contract together the obligation of supporting, maintaining, and educating their children. La.C.C. art. 227. This obligation stems not from marriage but from the paternity or maternity of the parent involved, and the support of the child is one of the strongest obligations the law imposes upon a parent. In re EWB, 441 So.2d 478 (La.App. 2d Cir.1983); Pierce v. Pierce, 397 So.2d 62 (La.App. 2d Cir.1981).
*657 The Civil Code discusses alimony, which encompasses the child support obligation, as that which is necessary for the nourishment, lodging, and support of the person who claims it, including education in the case of a minor or full time dependent student under nineteen years. La.C.C. art. 230. The obligation of alimony is the term used to designate the duty imposed on one person of furnishing to the other an allowance for maintenance. This obligation necessarily presupposes that one of these persons is in need while the other is able to render aid. Hogan v. Hogan, 549 So.2d 267 (La.1989), citing 1 M. Planiol, Civil Law Treatise, pt. 1 § 659. Alimony is granted in proportion to the needs of the person requiring it, and the circumstances of those who are able to pay. La.C.C. art. 231; Borden v. Borden, 550 So.2d 901 (La.App. 2d Cir.1989).
With regard to the relationship between the needs of the recipient of alimony and the wealth of the payor, Planiol discussed the effect of a decrease or increase in the income of the payor, as follows:
The needs of the one and the fortune of the other are necessarily variable. Consequently the amount fixed by the court is always temporary. It may be modified at any time in such a manner as to follow equitably the fluctuations of both parties' wealth. Thus, should the needs of the creditor diminish, the amount of the pension could be reduced. The same holds true if the debtor should find himself, in turn, in an increasing state of pecuniary difficulty.
* * * * *

Although the law does not mention a possible increase, it would be legally allowed if the needs of the one or the income of the other had increased since the judgment. 1 M. Planiol, Civil Law Treatise, pt. 1 § 682 (emphasis added).
The substantive provision of the French law which Planiol was discussing is embodied in La.C.C. art. 232. While that article addresses a substantial change in circumstances which would cause a reduction in alimony, the same principle is also applicable conversely to increase alimony. See La.R.S. 9:311(A). Ms. Green may prove the needs of the child have increased, her ability to provide has decreased, or Mr. Scott's ability to provide has increased. In Crowder v. Crowder, 595 So.2d 810 (La.App. 2d Cir.1992) this court held:
In order to warrant modification of a child support award, the petitioning party logically must show that circumstances have substantially shifted in a positive or negative direction consistent with the adjustment sought. For example, a parent seeking an increase in payments should be required to demonstrate an improvement in the payor's financial condition, a worsening in the payee's financial condition, or greater needs by the minor. Any other approach would defy reason and produce absurd results. If the parents are divorced and the child is living with the mother, he is entitled to the same standard of living as if he resided with his father whenever financial circumstances of the father permit. Ducote v. Ducote, 339 So.2d 835 (La.1976).
The Louisiana Child Support Guidelines define gross income as income from any source. La.R.S. 9:315(4)(a). In addition to the general definition, the statute provides a lengthy, non-exclusive listing of the kinds of items included in the definition of "gross income" such as salaries, wages, commissions, bonuses, dividends, severance pay, pensions, interest, trust income, annuities and capital gains. Id. The definitional statute also provides a specific list of revenue sources which are expressly excluded from the definition of gross income. La.R.S. 9:315(4)(d).
Lottery proceeds are subject to Louisiana state income tax and the federal income tax. See La.R.S. 47:9025 and 26 U.S.C.A. § 61; McClanahan v. United States, 292 F.2d 630 (5th Cir.1961); see also La.R.S. 47:42. Additionally, our legislature has provided for the withholding of lottery proceeds from persons who have outstanding child support arrearages. LSA-R.S. 47:9026.

Discussion
Appellant first argues that the trial court erred by including the lottery proceeds as *658 part of his "gross income" for purposes of calculating his child support obligation. He bases this argument upon Act 117 of 1990 which removed from the illustrative list of income sources under La.R.S. 9:315(4)(a), the terms "prizes" and "gifts." Nevertheless, under subsection (d) of that same provision, the legislature chose not to add prizes or gifts to the specific list of items excluded from the definition of gross income. Under these circumstances, we believe that the nature of this lottery "prize" should be considered in comparison to the nonexclusive listing of other income sources set forth in the act. The legislature, in our opinion, did not intend to exclude any items that might be considered in the broad category of prizes if such items have characteristics similar to the other sources of funds or assets listed in the statute.
When reviewed in comparison to the items listed in La.R.S. 9:315(4)(a), and in particular, trust income, annuities, severance pay, and capital gains, we find the appellant's annual lottery proceeds must be considered as "gross income" even though they represent an unearned flow of funds and are in the nature of a prize. This annual flow of funds clearly increases appellant's standard of living and improves his financial ability to provide for his son in the same way that a large and unexpected capital gain or severance pay award can cause an increase in one's wealth.
Further bolstering our decision is the fact that lottery proceeds are subject to Louisiana and federal income tax. Moreover, our legislature has provided for the withholding of lottery prizes of persons who have outstanding child support arrearages. It would be somewhat anomalous to hold that lottery proceeds are subject to income taxes and garnishment to pay child support arrearages, yet they are not gross income for the purpose of calculating an initial child support award or an increase to a former award.
Finally, though appellant also argues that no substantial change in circumstance has occurred to allow for a re-evaluation of his child support obligation, his argument is clearly dependant on the exclusion of the lottery proceeds from the calculation of his gross income. When, as in this case, the domiciliary parent earns less than one thousand dollars a month, and the nondomiciliary parent's monthly taxable income increases from $3,299.78 to $5,752.00 or approximately 75%, and the increase is not due to circumstances specifically exempted from the gross income calculation in La.R.S. 9:315(4)(d), then a change in circumstances has occurred necessitating an increase in the monthly child support award. Cf. Grigsby v. Grigsby, 573 So.2d 1309 (La.App. 2d Cir.1991), which held that the support payor's assets and income are relevant factors in setting an award for child support when an increase is sought.

Conclusion
For the reasons expressed herein, we affirm the juvenile court judgment increasing appellant's child support obligation. Costs of this appeal are assessed against appellant.
AFFIRMED.